**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHANNON M. WAGNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **2:03cv1319** |
| | ) | |
| **PPG INDUSTRIES, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court for disposition are the following:

- DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (*Document No. 33*) filed by defendant PPG Industries, Inc., with brief in support (*Document No. 34*) ("Defendant's Motion" and "Defendant's Brief," respectively);
- PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (*Document No. 47*) ("Plaintiff's Brief in Opposition");
- DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (*Document No. 50*) ("Defendant's Reply");
- PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (*Document No. 39*), with brief in support (*Document No. 40*) ("Plaintiff's Motion" and "Plaintiff's Brief," respectively);
- DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (*Document No. 52*) ("Defendant's Brief in Opposition"); and
- PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (*Document No. 54*) ("Plaintiff's Reply").

After considering the filings of the parties, the evidence of record and the relevant statutory and case law, Defendant's motion for summary judgment will be granted. The Court will decline to exercise jurisdiction over Defendant's Counterclaim, which will be dismissed without prejudice.

Background

Plaintiff Shannon M. Wagner ("Wagner" or "Plaintiff") was hired by defendant PPG Industries, Inc. ("PPG") as a secretary in the Law and Intellectual Property Department ("the Law Department") in 1989. Def's Stmt. of Facts at ¶¶ 3-4. In 1992 she was promoted to Legal Assistant, and in November of 1997 she was promoted to Senior Paralegal. *Id*. at ¶¶ 5, 8.

In or around 1993 the Labor and Employment Section was created within the Law Department, and Wagner became employed in that section. Pltf's depo. at 29-30. In August of 1997, while still employed by PPG, Wagner enrolled at the Duquesne University School of Law, evening division. *Id*. at ¶ 6. PPG paid for portions of her education through its Employee Education Assistance Program ("EEAP"). *Id*. at ¶ 7. In order for funding of her education to continue through the EEAP, Wagner was required to become a member of the Duquesne Law Review, which she did. Pltf's Add'l Facts at ¶ 16. The requirement that Wagner become a member of the Law Review was memorialized in an Agreement and Promissory Note, which also imposed on Wagner an obligation to reimburse PPG for its payment of her tuition if she voluntarily terminated her employment with PPG within five years of her completion of law school. Pltf's depo. ex. 6. The original Agreement and Promissory Note was superseded by a second repayment agreement which "required [Wagner] to repay any EEAP expenses paid by PPG for all graduate level courses taken during the last 36 months of ... employment" if she were to voluntarily terminate her employment. Pltf's depo. ex. 7. Wagner graduated from law school in June of 2000, passed the Pennsylvania Bar Examination, and was admitted to the Pennsylvania Bar. Pltf's Affidavit at ¶¶ 8, 10. Effective June 1, 2001, she was promoted from Senior Paralegal to Attorney Trainee in the Labor and Employment Section and worked in that capacity until she was terminated in July of 2002. *Id*. at ¶ 9.

In 2001, there was a general sense of concern within PPG management about the economy and about the financial condition of PPG. Def's Stmt. of Facts at ¶ 48. According to Wagner, in a May 2001 conversation with Glenn Bost ("Bost"), Assistant General Counsel of the PPG Law Department, Bost "said that because of possible financial constraints at the time that [Wagner's] promotion to attorney was expected, [but] that it might not happen until the first

quarter of 2002." Pltf's Resp. to Def's Facts at ¶ 51; Pltf's depo. at 228-29.

At some point in late 2001 or early 2002 James Diggs ("Diggs"), General Counsel of PPG, instructed Bost to reduce the headcount in the Labor and Employment Section from five to four professionals. Def's Stmt of Facts at ¶ 62. Diggs instructed Bost that, of the four remaining positions in the Labor and Employment Section, three of the positions should be held by lawyers, and the headcount could not be increased to accommodate a fourth lawyer. *Id*. at ¶ 63. On March 20, 2002, Bost informed Wagner that the headcount for the Labor and Employment Section had been reduced from five to four persons, and that due to the reduction he had to decide how to staff the section. *Id*. at ¶ 64-65. Accordingly, Bost had to decide how to fill the third and final Attorney position in the Labor and Employment Section, and whether that position would be filled by Wagner or someone else. *Id*. at ¶ 69.[1] Wagner testified at her deposition that she thought that Bost was truthful regarding the headcount reduction from five to four, that as a result of the reconfiguration of the Labor and Employment Section and depending on how Bost chose to staff the section, her job might be eliminated, and that she had not been guaranteed the third and final attorney position in the Labor and Employment Section. *Id*. at ¶¶ 66-67, 70.

Bost ultimately recommended staffing the Labor and Employment Section with three experienced attorneys and one legal assistant. Def's Stmt of Facts at ¶ 80. Wagner was not promoted to Attorney, and her employment with PPG was terminated as of July 15, 2002. Def's Stmt. of Facts at ¶ 3. She was informed of the decision to terminate her position on June 19, 2002 by Bost and Gary Armbrust ("Armbrust"), her immediate supervisor in the Labor and Employment Section. *Id*. at ¶ 89. Wagner was sixty (60) years old when her employment was terminated. Pltf's Add'l Facts at ¶ 94.

In November of 2002, PPG hired Lady Cumpiano, Esquire ("Cumpiano"), who was in her

---

[1] Wagner purports to dispute this fact by alleging that she had already filled the third and final attorney position in the Labor and Employment Section. Her contention lacks merit because although she was admitted to the Pennsylvania Bar and was likely performing the work of an attorney, she was classified as an Attorney Trainee and had not been officially promoted to the position of Attorney.

early thirties and had seven or eight years of experience in private practice, as Assistant Counsel in the Labor and Employment Section. Def's Stmt of Facts at ¶ 101; Armbrust depo. at 95.

Wagner filed an Amended Complaint in which she has alleged violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA") (Count I), the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1054, *et seq.* (Count II), breach of contract (Count III), and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA") (Count IV). PPG has filed a Counterclaim against Wagner in which it alleges a breach of common law fiduciary duty and a breach of a confidentiality agreement. The gravamen of the Counterclaim is that approximately seven months after Wagner left PPG, she was retained by a then-PPG employee for professional advice regarding how to terminate his employment with PPG while still retaining a bonus which he expected to receive under PPG's "MAP" bonus plan. *See* Amended Answer and Counterclaim at ¶ 99. PPG has moved for summary judgment on all counts of Wagner's Amended Complaint, and Wagner has moved for summary judgment on PPG's Counterclaim.

## Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50. However, a party which opposes summary judgment must do more than rest upon mere allegations, suspicions, general denials, and vague statements.

In ADEA actions, the familiar *McDonnell Douglas*[2] formulation regarding the appropriate burdens of proof and allocation of production of evidence govern and guide the analysis of the evidence presented on a motion for summary judgment. Under *McDonnell Douglas*, the plaintiff must establish a *prima facie* case of discrimination; if this burden is met, the defendant must then articulate some legitimate, nondiscriminatory reason for the employee's treatment. *McDonnell*

2. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*Douglas*, 411 U.S. at 802. If the defendant articulates a legitimate, nondiscriminatory reason for the employee's treatment, then the plaintiff must demonstrate that the defendant's stated reasons were a pretext for discrimination. *Id*. at 804. The *prima facie* case under *McDonnell Douglas* "is not intended to be onerous." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir.), *cert. denied*, 515 U.S. 1159 (1995). The *prima facie* case raises an inference of discrimination because the courts presume that the challenged acts, if otherwise unexplained, are "more likely than not based on the consideration of impermissible factors." *Id*.

Pennsylvania courts generally interpret the PHRA in accordance with its federal counterparts. *See Kelly v. Drexel Univ*., 94 F.3d 102, 104 (3d Cir. 1996). The PHRA is to be interpreted "as identical to federal anti-discrimination laws except where there is something specifically different in its language" justifying different treatment. *Fogleman v. Mercy Hospital, Inc*., 283 F.3d 561, 567 (3d Cir. 2002). Neither party has argued that Plaintiff's PHRA claim is not, for the purpose of a motion for summary judgment, identical to her ADEA claim. Therefore, this Court will interpret the PHRA "as applying identically in this case and governed by the same set of precedents" as the relevant provisions of the ADEA. *Id.*

## Discussion

### A. Defendant's Motion for Summary Judgment

#### 1. The ADEA and PHRA Claims

Plaintiff alleges that she was terminated because of her age. The Court has found no direct evidence of discrimination, and the parties do not contend that such evidence exists. Under the ADEA and the PHRA, four elements must be shown to establish a *prima facie* case by indirect evidence. Specifically, a plaintiff must establish that (1) she was a member of a protected class (*i.e*., that she was at least 40 years old during the relevant period); (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) she ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination. *Monaco v. American General Assur. Co*., 359 F.3d 296, 300-01 (3d Cir. 2004)

(*citing Duffy v. Paper Magic Group*, Inc., 265 F.3d 163, 167 (3d Cir. 2001)). The Court finds and rules that Plaintiff has not stated a *prima facie* case of age discrimination. Plaintiff was clearly a member of the protected class and suffered an adverse employment action. Moreover, a reasonable fact finder could conclude that she was qualified for the position of Attorney. However, a reasonable fact finder could not conclude that she was replaced by a person sufficiently younger to permit an inference of age discrimination.[3]

PPG contends that Plaintiff cannot satisfy the fourth element because she cannot show that she was replaced by Lady Cumpiano, Esquire, who was in her early thirties when hired by PPG as Assistant Counsel. *See* Defendant's Br. at 4-5.[4] The Court agrees. Plaintiff has admitted that she could not fill the position of Assistant Counsel, that the positions of Attorney and Assistant Counsel were "not comparable," that she and Cumpiano were not vying for the same position, and that PPG has not hired anyone into the positions of Attorney Trainee or Attorney since her termination. Pltf's depo. at 10-11, 369-70, 406, 473-74. Moreover, Plaintiff's evidence that "at least some of Wagner's duties were absorbed by Cumpiano, such as the ERISA and benefits work," is not sufficiently probative to create a genuine issue of material fact regarding whether Wagner was replaced by Cumpiano. *See* Plaintiff's Response at 6.

Assuming, *arguendo*, that Plaintiff has stated a *prima facie* case of age discrimination, summary judgment is nevertheless appropriate. "[T]o defeat summary judgment when the defendant answers the plaintiff's *prima facie* case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons for

---

[3] The same result is reached if Wagner's termination is considered as a reduction in force. To satisfy the fourth element in a reduction in force situation, a plaintiff must show that the "employer retained a sufficiently younger similarly situated employee." *Monaco v. American General Assur. Co.*, 359 F.3d 296, 301 (3d Cir. 2004). The Court finds and rules that there is no evidence that PPG did so in this case, and therefore Plaintiff cannot state a *prima facie* case under a reduction in force framework.

[4] Cumpiano was hired in November of 2002. Def's Stmt. of Facts, ¶ 101. Plaintiff's last day of employment with PPG was July 15, 2002. *Id*. at ¶ 3.

its action, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). The *Fuentes* court went on to describe the quantum of evidence required to avoid summary judgment as follows:

> [T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons ... was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext). To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."

*Id*. at 764-65 (citations omitted). Moreover, to determine whether a proffered reason for an employment decision is pretextual, "what matters is the perception of the decision maker." *Billet v. CIGNA Corp*., 940 F.2d 812, 825 (3d Cir. 1991), *overruled in part on other grounds*, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). *See also Fuentes*, 32 F.3d at 766-67 (noting that the state of mind of the relevant decisionmaker must be shown to establish that proffered reasons are, in fact, pretextual). Finally, in a recent age discrimination case the Third Circuit has strongly reaffirmed the proposition that "the plaintiff must demonstrate that <u>each</u> of the employers (*sic*) proffered nondiscriminatory reasons are pretextual," and that a district court may grant summary judgment in favor of the employer notwithstanding the plaintiff's ability to cast doubt upon some, but not all, of the proffered reasons. *Kautz v. Met-Pro Corp*., No. CIV.A. 04-2400, *20 (3d Cir. June 17, 2005) (*citing Fuentes, supra*, 32 F.3d at 764) (emphasis in original). The *Kautz* court also reiterated that a plaintiff can demonstrate pretext "by showing that some of the employer's proffered reasons are a pretext in such a way that the employer's credibility is seriously undermined, therefore throwing all the proffered reasons into doubt." *Id*. (*citing Fuentes,* 32 F.3d at 764 n. 7).

PPG contends that Wagner was terminated because economic conditions required PPG "to reduce the number of professionals in the Labor and Employment Section from five to four,

with three of those positions being held by attorneys." Defendant's Brief at 6.[5] According to PPG, a decision was made to eliminate Plaintiff's entry-level position and to staff the Section with "a more experienced attorney who would be able to handle more legal situations on her own." *Id.*[6] There is some evidence from which one can infer that PPG's reduction of staff in the Labor and Employment Section, in conjunction with the hiring of Cumpiano, did not achieve a significant reduction in cost, if any, and therefore some degree of suspicion is cast upon PPG's contention that Plaintiff's termination was calculated to reduce costs. *See* Pltf's Additional Facts at ¶¶ 102-05; Pltf's Response at 11. However, in the Court's view this evidence is insufficient to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that a fact finder could find PPG's goal of saving money to be pretextual, nor is it sufficient to call into question PPG's overall credibility. *Fuentes*, 32 F.3d at 765. The directive to reduce the number of professionals in the Labor and Employment Section, the financial constraints experienced by PPG, and the possibility that positions in the law department would be eliminated are well-supported by considerable evidence of record. *See* Pltf's depo. ex. 12, 18, 21, 26, 29; Diggs depo. ex. 17. In any event, it is undisputed that Plaintiff was not an "experienced attorney," and Plaintiff has proffered no evidence sufficient to rebut this legitimate, nondiscriminatory reason for her termination. *See* Def's Stmt. of Undisputed Facts at ¶¶ 73-75 (outlining numerous responsibilities, *e.g.*, counseling clients, preparing responses to discovery, handling depositions, which Plaintiff had never handled as an attorney). Therefore, although some suspicion has been cast upon PPG's goal of saving money in the Law Department, Plaintiff has failed to demonstrate any weaknesses, implausibilities, and the like with respect to PPG's contention that she was terminated because PPG wanted to staff the Labor and Employment Section with three experienced attorneys, and that Wagner was not an experienced attorney.

---

[5] Plaintiff characterizes the decision as one to retain three lawyers, but to eliminate the paralegal position. Pltf's Response to Defendant's Undisputed Facts at ¶ 62.

[6] It is significant that Plaintiff stated in five cover letters to prospective employers that "PPG eliminated my attorney position due to economic conditions." Pltf. depo. ex. 39.

The Court has carefully considered the remaining arguments made by Plaintiff in support of a showing of pretext. For example, there is evidence that Armbrust asked Plaintiff how long she planned to work for PPG in November of 2001,[7] that Armbrust was surprised that Wagner's youngest child was 29 years old, that Armbrust failed to provide Wagner with an evaluation of her performance in 2001, and that he did not meet with Plaintiff to discuss her goals and responsibilities for 2002. *See* Pltf's Response at 8-11. However, in the Court's view this evidence casts little, if any, doubt upon PPG's contention that Plaintiff was terminated because PPG wanted to staff the Labor and Employment Section with three experienced attorneys, and that Wagner was not an experienced attorney. Therefore, the Court will grant summary judgment in favor of PPG on Plaintiff's ADEA and PHRA claims.

2. The ERISA Claim

The gravamen of Plaintiff's ERISA claim is that had she "been allowed to continue with her employment until her normal retirement date or later, ... she would have been entitled to receive a normal retirement benefit under the Retirement Plan and thereby would have been entitled to substantially increased benefits under the Retirement Plan over her remaining lifetime." Amended Complaint at ¶ 61.

Under section 510 of ERISA it is "unlawful for any person to discharge ... a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ..." 29 U.S.C. § 1140. The Third Circuit has provided clear guidance in section 510 cases:

> The legal standard in § 510 cases is very clear. To recover, a plaintiff must demonstrate that the defendant had the specific intent to violate § 510. This requires the plaintiff to show that the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits. The plaintiff may use both direct and circumstantial evidence to establish specific intent, but when the plaintiff offers no direct evidence that a violation of § 510 has occurred, the court applies a shifting burdens analysis,

---

[7] The Court finds and rules that this comment amounts to a "stray remark" as it is temporally remote from Plaintiff's termination, is not related to the decision to terminate Plaintiff's position, and is not probative of age based discriminatory animus.

> similar to that applied in Title VII employment discrimination claims. In this burden-shifting analysis, the plaintiff must first establish a prima facie case by showing: (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled. If the plaintiff is successful in demonstrating her prima facie case, the burden then shifts to the defendant-employer, who must articulate a legitimate, nondiscriminatory reason for the prohibited conduct. If the employer carries its burden, the plaintiff then must persuade the court by a preponderance of the evidence that the employer's legitimate reason is pretextual.

*DiFederico v. Rolm Co.*, 201 F.3d 200, 204-05 (3d Cir. 2000) (quotations and citations omitted); *see also Romero v. SmithKline Beecham*, 309 F.3d 113, 119 (3d Cir. 2002).

There is no direct evidence that any PPG employee had the specific intent to violate section 510 in connection with Plaintiff's employment. In fact, Bost, who decided to terminate Plaintiff's employment, testified that he never considered Plaintiff's pension when he was deciding whether to terminate her employment, and there is no evidence which directly contradicts his testimony. Bost depo. at 244. On the other hand, Plaintiff's evidence of a violation of section 510 is set forth in her deposition testimony:

> Q: What evidence do you have that PPG's decision to eliminate your position was related in any way to its desire to interfere with your attainment of greater retirement benefits?
> A: The decision that PPG made had a - certainly had that effect.
> Q: I understand -
> A: By terminating me when they did, at the time that PPG did, they saved a lot of money.
> Q: Beyond the effect that the decision had, what evidence do you have that PPG was consciously making the decision it did to eliminate your position, at least in part because it would impact your retirement benefits?
> A: Because I believe that was a factor in PPG's terminating me. And the evidence can be - was not available to me at that time. But through discovery there's the potential to determine that was so.
> Q: Have you seen anything in the documents produced by PPG that suggests that the degree to which you were entitled to retirement benefits was a factor in its decision to eliminate your position?
> A: In the documents produced by PPG, I have not seen that.

Pltf's depo. at 454-55.

Our court of appeals has consistently rejected section 510 claims where, as in this case, the only "evidence" of a specific intent to violate ERISA is the fact that the employer would save money through the plaintiff's termination, or that the employee lost the opportunity to accrue additional benefits. *See Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 523 (3d Cir. 1997) ("where the only evidence that an employer specifically intended to violate ERISA is the

employee's lost opportunity to accrue additional benefits, the employee has not put forth evidence sufficient to separate that intent from the myriad of other possible reasons for which an employer might have discharged him. This kind of deprivation occurs every time an ERISA employer discharges an employee and is not alone probative of an intent to interfere with pension rights") (citations and quotations omitted); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 348 (3d Cir. 1990) ("Where [the opportunity to accrue additional benefits through more years of employment] is the only deprivation, a prima facie case requires some additional evidence suggesting that pension interference might have been a motivating factor"). The Court also observes, as did the Third Circuit in *Turner*, that "the record contains no evidence that the savings to the employer resulting from [Plaintiff's] termination were of sufficient size that they may be realistically viewed as a motivating factor." *Turner*, 901 F.2d at 348.

To summarize, Plaintiff has produced no evidence from which a reasonable fact finder could find that PPG terminated her employment with the specific intent to prevent her from accruing additional benefits under PPG's Retirement Plan. Therefore, the Court finds and rules that Plaintiff has failed to state a *prima facie* case of a violation of section 510. Accordingly, the Court will grant summary judgment in favor of PPG on Plaintiff's section 510 claim.

3. The Breach of Contract Claim

The Amended Complaint alleges that PPG "assured the plaintiff that if she qualified for Law review staff, successfully completed law school, and passed the Pennsylvania Bar Examination, she would be promoted to Attorney and would continue to be employed by [PPG] for at least five years." Amended Complaint at ¶ 69.

"Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quotations and citation omitted). Pennsylvania law imposes a heightened burden of proof on an employee who alleges the existence of an oral employment contract. As stated by the Superior Court of Pennsylvania:

> [B]ecause of its vitality, courts insist that to contract-away the at-will presumption, much clarity is required. The intention to overcome the presumption will not be unheedingly inferred. This court has recently held that the modification of an "at-will" relationship to one that can never be severed without "just cause" is such a substantial modification that a very clear statement of an intention to so modify is required. *Martin v. Capital Cities Media, Inc.*, 511 A.2d 830 (Pa. Super. 1986). Absent this clarity, again, the relationship is "at-will" and a discharge is not reviewable in a judicial forum ....

*Veno v. Meredith*, 515 A.2d 571, 578 (Pa. Super. 1986). In *DiBonaventura v. Consolidated Rail Corp*., 539 A.2d 865 (Pa. Super. 1988), the Superior Court reaffirmed the heightened burden of proof imposed on one who seeks to establish an oral employment contract:

> The at-will employment presumption will be overcome only if the employee can show with clarity and specificity that the parties contracted for a definite period. In order for an employee to carry his burden of proving that the at-will employment contract has been modified into employment for a specified term, he must show from the circumstances surrounding the undertaking of employment that the parties did not intend the employment to be at-will. The burden of proof here is very great: Modification of an at-will relationship to one that can never be severed without just cause is such a substantial modification that a very clear statement of an intention to so modify is required.

*DiBonaventura*, 539 A.2d at 867-68 (citations and quotations omitted).

The dispute boils down to whether, in light of the heightened burden of proof imposed by Pennsylvania law, a reasonable person could find that there was a contract between Plaintiff and PPG to promote her to the position of Attorney after she graduated from law school and passed the bar exam. Wagner's first theory of her breach of contract action is that an "Agreement and Promissory Note," which sets forth the terms of her participation in PPG's Employee Education Assistance Program, is the contract upon which her claim is based. *See* Pltf's depo. at 33-39; Pltf's depo. ex. 6. However, the "Agreement and Promissory Note" makes no reference whatsoever to any obligation on the part of PPG to employ Plaintiff after she graduated from law school, and therefore is insufficient to support her breach of contract claim. Additionally, Plaintiff testified that the "Agreement and Promissory Note" was superseded by another Agreement that she signed in April of 2001, and she admitted that the subsequent Agreement "did not provide guarantees by PPG or assurances by PPG of continued employment." Pltf's depo. at 49, 52; Pltf's depo. ex. 7. Moreover, Plaintiff's testimony about her subjective understanding of PPG's obligation to employ her pursuant to these agreements is so inconsistent

with the plain language of said agreements that no reasonable fact finder could find that they evidence an employment contract between Plaintiff and PPG. *See* Pltf's depo. at 55-56.[8] Finally, Plaintiff testified that the agreements imposed no legal obligations on PPG to employ her for any definite length of time. Pltf's depo. at 55-56; 65-66 ("No, I don't think it was a legal obligation.").

Wagner's second theory of her breach of contract action, which she first articulated on the second day of her deposition, is that she had an oral employment contract with PPG. Specifically, Plaintiff claimed that in 1997 she entered into an oral employment contract with Lynne Schmidt, who at the time was Senior Counsel in the Labor and Employment Section. Pltf's depo. at 255-56. The Court has reviewed Ms. Schmidt's deposition testimony, and said testimony does not support Plaintiff's claim that she and Ms. Schmidt entered into an oral contract for post-law school employment. In fact, Ms. Schmidt's testimony is contrary to Plaintiff's assertion:

> Q: Do you know if anyone ever represented to Shannon Wagner that if she completed law school and passed the bar exam that she would have a position at PPG in the Law Department or otherwise?
> A: From my experience, no one made that representation, no one could make that representation, they didn't make that representation, and she was an employee at will.
> Q: When you say no one could make that representation, what do you mean no one could make that representation?
> A: At PPG, that would be in essence an employment contract. And from my experience as senior counsel of Labor, Employment and Benefits at PPG, there was no one with an employment contract at PPG. And in fact, Miss Wagner was fully aware of that fact because it was a matter of discussion in matters that we worked on.

Schmidt depo. at 155. Plaintiff's own testimony regarding the alleged oral contract is far from the "very clear statement" of intent to contract required by the above-referenced cases, and is not sufficient to created a genuine dispute of material fact regarding whether Schmidt orally entered into an employment contract with Plaintiff on behalf of PPG. *See* Pltf's depo. at 255-59. In essence, Plaintiff testified at her deposition that Lynne Schmidt was more or less her mentor at

[8] What both agreements actually set forth, in substance, is Plaintiff's obligation to reimburse PPG for all amounts paid in furtherance of her education *in the event that Plaintiff were to voluntarily terminate her employment.*

PPG, and that Schmidt had expressed to Wagner that there was "this expectation that [Plaintiff] will be promoted to Attorney and continue to work at PPG." *Id*. at 259.

To summarize, the evidence of record, viewed in the light most favorable to Plaintiff, demonstrates that Ms. Schmidt, and possibly others, recognized the potentiality of Plaintiff being promoted to the position of Attorney after she passed the bar exam, and perhaps wanted Plaintiff to be promoted to said position. However, the evidence of record is simply insufficient for a reasonable fact finder to conclude that Ms. Schmidt or anyone else acting on behalf of PPG entered into a written or oral contract to employ Plaintiff as an Attorney after she passed the bar exam. Therefore, the Court will enter summary judgment in favor of PPG on Plaintiff's breach of contract claim.

B. PPG's Counterclaim

PPG's Counterclaim alleges that approximately seven months after her termination from PPG, Wagner provided advice to a then-current PPG employee regarding the employee's entitlement to a bonus under PPG's Management Award Plan ("MAP"), a bonus plan for PPG employees. Answer and Counterclaim at 14. The Counterclaim further alleges that "[a]s an attorney formerly employed by PPG, Plaintiff owes certain continuing fiduciary duties of loyalty to PPG and certain continuing duties to avoid engaging in undisclosed conflicts of interest," and that her representation of the PPG employee breached her common law fiduciary duties to PPG. *Id*. Finally, the Counterclaim alleges that Wagner's representation of the PPG employee breached the terms of a "Security Debriefing Statement" which she signed prior to leaving PPG. *Id*. at 13.

The Court of Appeals for the Third Circuit has held that if the federal counts are dismissed then the district court should "ordinarily refrain from exercising jurisdiction [over the state law claims] in the absence of extraordinary circumstances." *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 195-96 (3d Cir. 1976). *See also Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("Under *Gibbs* jurisprudence, where the claims over which the district court has original jurisdiction are dismissed before trial, the district court must decline to

decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.")

Given that PPG's motion for summary judgment will be granted on all of Plaintiff's claims, including her federal ADEA and ERISA claims, and given that there are no extraordinary circumstances which would warrant the exercise of jurisdiction over PPG's state law Counterclaim, the Court will decline to exercise supplemental jurisdiction over said Counterclaim. Accordingly, PPG's Counterclaim for breach of fiduciary duty under Pennsylvania state law will be dismissed without prejudice. *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir. 1992) (once all federal claims have been dropped from the case, the case should either be dismissed or transferred to the Pennsylvania Court of Common Pleas pursuant to 42 Pa. Cons. Stat. Ann. § 5103(b)).

## Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment will be granted. The Court will decline to exercise supplemental jurisdiction over PPG's Counterclaim, which will be dismissed without prejudice. An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHANNON M. WAGNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **2:03cv1319** |
| | ) | |
| **PPG INDUSTRIES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER OF COURT**

AND NOW, this 25th day of July, 2005, in accordance with the foregoing Memorandum Opinion it is hereby **ORDERED, ADJUDGED and DECREED** as follows:

1) Defendant's Motion for Summary Judgment (*Document No. 33*) is GRANTED and judgment in favor of defendant PPG Industries, Inc. is hereby ENTERED on all counts of Plaintiff's Amended Complaint;

2) Plaintiff's Motion for Summary Judgment (*Document No. 39*) is DENIED AS MOOT. Defendant's Counterclaim is dismissed without prejudice to re-filing in state court; and

3) The clerk shall docket this case as closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: James B. Lieber, Esquire
Thomas M. Huber, Esquire
Lieber & Hammer
5528 Walnut Street
Pittsburgh, PA 15232

Shannon Wagner, Esquire
141 Lloyd Avenue
Pittsburgh, PA 15218

Carolyn M. Branthoover, Esquire
David J. Kolesar, Esquire
Miranda E. Nickels, Esquire
Kirkpatrick & Lockhart
535 Smithfield Street
Henry W. Oliver Building
Pittsburgh, PA 15222-2312